IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL PUTROW,

      Plaintiff,

Case No.

v.

ZAKHEIM & ASSOCIATES, P.A.

**JURY TRIAL DEMANDED**

      Defendant.
_____/

**COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES
AND DEMAND FOR JURY TRIAL**

**I.  Introduction**

1. This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. (hereafter "FDCPA") and the Florida Consumer Collection Practices Act, F.S.A. §559.72 (hereafter "FCCPA").  These laws prevent debt collectors from *inter alia*, engaging in abusive, deceptive, and unfair collection practices.

**II.  Jurisdiction and Venue**

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. §1331, 1337.

3. Venue lies in this District pursuant to 28 U.S.C. §1391(d).

**III. Parties**

4. Plaintiff Michael Putrow, (hereafter "Plaintiff) is an individual residing at 11727 Spanish Lake Drive, Tampa, Florida 33635.

5. Defendant Zakheim & Associates (hereafter "Defendant") is a Florida for-profit corporation, with its principle place of business located at 1045 University Drive, Suite

202, Plantation, Florida 33324.  The principle purpose of Defendant is the collection of debts, using the mails and telephone, and Defendant regularly attempts to collect debts alleged to be due to another.

### IV. Factual Allegations

6. Beginning in the month of December 2008, Plaintiff started to receive frequent telephone calls from Defendant at his home and on his cell phone.

7. Defendant was attempting to collect a credit card debt that was allegedly owed to Capital One Bank.

8. The debt was incurred primarily for personal and/or household purposes and was therefore a consumer debt as defined by 15 U.S.C. §1692(a).

9. Plaintiff, a Cardiovascular Perfusionist at Saint Joseph's Hospital, operates a heart-lung machine during open-heart surgery.

*First Collection Call*

10. On or about the month of December 2008, Plaintiff, during an operation while he was operating a heart-lung machine, was notified by a nurse that he had an "emergency call" on line one.

11. The telephone call was not an emergency, but was in fact a representative of Defendant calling to collect the debt.

12. The representative of Defendant called the main hospital operator who transferred him to the cardiac surgery front desk.

13. When Plaintiff answered the call, the representative proceeded to tell Plaintiff that he was extremely delinquent on his account.

14. The representative made the false threat to Plaintiff that if Plaintiff did not pay the amount due they would put a lien on his home.

15. Plaintiff reasonably inferred that Defendant was threatening to foreclose on his home.

16. Further, the representative threatened to garnish Plaintiff's wages.

17. It was very difficult for Plaintiff to get a word in when the representative was talking, but Plaintiff was able to explain to the representative that he was calling directly into the operating room suite itself and that Plaintiff was operating a heart-lung machine during open heart surgery.

18. Plaintiff advised the representative that he could not receive telephone calls at work.

19. Defendant ignored the information provided by Plaintiff and continued to threaten him to pay the account.

20. When Plaintiff asked for the representative's name, he did not provide a name, but just said that he was calling from Zakheim & Associates.

21. When Plaintiff was finally able to finish the phone call, he was very nervous, shaking and distracted.

22. The staff and heart surgeon performing the operation noticed that he was upset and asked if he was able to proceed with the operation.

### *Second Collection Call*

23. Approximately two days after the first phone call, Plaintiff received another collection call from Defendant into the operating room.

24. Once again, Plaintiff was operating the heart lung machine at the time he was contacted by Defendant.

25. When Plaintiff spoke to the Defendant's representative, the representative proceeded to threaten Plaintiff that they would place a lien on his home and garnish his wages.

26. Plaintiff asked the representative his name, but the representative only said that he was calling from Zacheim & Associates and that they will pursue the collection of the account to the "fullest extent".

27. Plaintiff again explained that Defendant was calling directly into the operating room suite and that he was currently running a heart-lung machine.

28. The representative of Defendant said that he did not care where he was calling.

29. The representative further demanded payment and wanted to know when Plaintiff would make a payment.

30. Plaintiff, who was in the middle of surgery, told the representative never to call here again and hung-up the phone.

31. After the telephone call, Plaintiff felt faint, nauseated and nervous.

32. Plaintiff began to shake and had to sit down.

### *Third Collection Call*

33. On or about two weeks after the second telephone call, Plaintiff received a third telephone call into the operating room.

34. The nurse notified Plaintiff that the telephone call was from a family member with an emergency.

35. Believing that it was a family member with an emergency, Plaintiff took the telephone call.

36. When Plaintiff answered the phone he realized that the representative of Defendant had lied to the nurse about his identity so he would be able to speak to Plaintiff while he was in the operating room.

37. The representative again demanded payment and wanted to know when Plaintiff would pay.

38. Plaintiff again became extremely nervous, and had to regain his composure before returning to surgery.

39. After the procedure, Plaintiff left the operating room and was asked by the nurse who initially answered the phone call what the emergency was, and if everything was all right.

40. Plaintiff explained to the nurses at the front desk that although the nurse who transferred the call was told that the caller was a family member and that it was an emergency, that it was actually Zakheim & Associates calling collecting a debt.

### *Fourth Collection Call*

41. On or about the last week of June, Plaintiff received another collection call from Defendant at his place of employment.

42. A representative of Defendant called into the operating suite and a hospital employee notified Plaintiff that he had a telephone call.

43. When Plaintiff received the phone call, the representative of Defendant demanded to know when Plaintiff would pay the amount allegedly due.

44. Plaintiff responded that he advised Defendant numerous times that he could not receive phone calls when he was at work, and that Defendant was calling into an operating suite.

45. The representative of Defendant disregarded what Plaintiff said and continued to demand payment on the alleged debt.

46. When the phone call ended, Plaintiff felt frustrated, upset, and discouraged that he could not stop the repeated collection calls from Defendant.

47. Throughout the period in which Defendant was calling Plaintiff's place of employment, Defendant has continued to call Plaintiff on his house phone and cell phone.

48. Defendant's harassing and abusive conduct is an invasion of Plaintiff's privacy, an intrusion upon Plaintiff's seclusion, and has resulted in actual damages to Plaintiff.

49. Defendant's harassing and abusive conduct was intentional and calculated to compel Plaintiff to pay an alleged debt.

50. Due to Defendants' deceptive and harassing telephone calls, Plaintiff felt nervous, anxious, angry, physically faint, very embarrassed and concerned about his professional reputation.

## FIRST CLAIM FOR RELIEF
### FDCPA Violation
### Michael Putrow v. Zakheim & Associates, P.A.

51. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 50.

52. The foregoing acts and omissions of Defendant and its agents constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692c(a)(1), 1692c(a)(3), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(5), 1692e(10), 1692f, and 1692f(6).

53. As a result if the above violations of the FDCPA, Defendant is liable to Plaintiff for declaratory judgment that Defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, costs and attorney's fees.

## SECOND CLAIM FOR RELIEF
### FCCPA Violation
### Michael Putrow v. Zakheim & Associates, P.A.

54. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 50.

55. The foregoing acts and omissions of Defendant and its agents constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§559.72(7) and 559.72(9).

56. The actions of Defendants were done with the intent to coerce Plaintiff into paying a consumer debt.

57. As a result of the above violations of the FCCPA, Defendants are liable to Plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, punitive damages and attorney's fees and costs.

WHEREFORE, PLAINTIFF respectfully prays that judgment be entered against DEFENDANTS for the following:

a. Declaratory Judgment that DEFENDANTS' conduct violated the FDCPA and the FCCPA;

b. Actual damages pursuant to 15 U.S.C. §1692k and F.S.A. §559.77(2);

c. Statutory damages pursuant to 15 U.S.C. §1692k and F.S.A. §559.77(2);

d. Punitive damages pursuant to F.S.A. §559.77(2);

e. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k and §559.77(2); and

f. For such other and further relief as may be just and proper.

Dated: August 20, 2009                              Respectfully submitted,


                                                                                                s/  G. Donald Golden  
                                                                                                G. DONALD GOLDEN, ESQUIRE  
                                                                                                Florida Bar No. 0137080  
                                                                                                don@brandonlawyer.com  
                                                                                                JAMES W. ELLIOTT, ESQUIRE  
                                                                                                Florida Bar No. 0040961  
                                                                                                james@brandonlawyer.com  
                                                                                                THE GOLDEN LAW GROUP  
                                                                                                213 N Parsons Avenue  
                                                                                                Brandon, Florida   33510  
                                                                                                Telephone:  (813) 413-8700  
                                                                                                Facsimile:   (813) 413-8701  
                                                                                                Attorney for Plaintiff


## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.


                                                                                                s/ G. Donald Golden  
                                                                                                 G. Donald Golden, Esquire